[Cite as *State v. Davis*, 2019-Ohio-4672.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 107925 |
| v. | : | |
| LARRY DAVIS, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART;
AND REMANDED
**RELEASED AND JOURNALIZED:** November 14, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-627261-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jennifer Meyer, Assistant Prosecuting Attorney, *for appellee.*

Myriam A. Miranda, *for appellant.*

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Defendant-appellant, Larry Davis, brings the instant appeal challenging his convictions and the trial court's sentence for rape, attempted rape, kidnapping, and sexual battery. Specifically, appellant argues that his convictions were not

supported by sufficient evidence and against the manifest weight of the evidence; the trial court failed to comply with Crim.R. 32 and denied appellant his right to allocution prior to the imposition of sentence; and that the trial court erred in imposing consecutive sentences. After a thorough review of the record and law, this court affirms appellant's convictions, vacates appellant's sentence, and remands the matter for resentencing consistent with this opinion.

## I. Factual and Procedural History

{¶ 2} Appellant was charged for various offenses he committed against victim A.W., the daughter of his niece J.H., with whom appellant lived. Appellant engaged in an ongoing pattern of sexually abusing A.W. between 2016 and 2018. A.W. eventually disclosed the abuse to a teacher at her school, Selden Makin. She subsequently opened up to her mother, J.H., about appellant's abuse.

{¶ 3} On April 4, 2018, the Cuyahoga County Grand Jury returned a 19-count indictment charging appellant with: nine counts of rape, violations of R.C. 2907.02(A)(1)(b) (Counts 1, 4, 5, 6, 7, 9, 10, 11, and 12); attempted rape, in violation of R.C. 2923.02 and 2907.02(A)(1)(b) (Count 2); kidnapping, in violation of R.C. 2905.01(A)(4) (Counts 3, 8, and 14); sexual battery, in violation of R.C. 2907.03(A)(5), with a furthermore specification alleging that the victim was less than 13 years of age (Count 13); four counts of rape, violations of R.C. 2907.02(A)(2) (Counts 15, 16, 17, and 18); and sexual battery, in violation of R.C. 2907.03(A)(5) (Count 19).

{¶ 4} Counts 1, 2, 4, 5, 6, 7, 10, 11, and 12 contained a furthermore specification alleging that appellant "purposely compelled the victim, who was under thirteen years of age but ten years of age or older at the time of the commission of the offense * * * to submit by force or threat of force." Counts 3, 8, and 14 contained furthermore specifications alleging that the victim was under the age of 18, and sexual motivation specifications.

{¶ 5} Appellant was arraigned on April 9, 2018. He pled not guilty to the indictment.

{¶ 6} A jury trial commenced on October 29, 2018. The following witnesses testified on behalf of the state: (1) A.W.'s mother, J.H.; (2) A.W.; (3) A.W.'s teacher, Selden Makin; (4) Sexual Assault Nurse Examiner Kathleen Goellnitz; (5) Forensic DNA Analyst Hristina Lekova; and (6) Cleveland Police Detective Richard Durst. Appellant testified on his own behalf at trial.

{¶ 7} A.W. testified at trial about the ongoing sexual abuse committed by appellant. She asserted that her relationship with appellant changed based on an incident that occurred on July 3, 2016, at appellant's girlfriend's house. At the time, A.W. was 12 years old. Appellant was sleeping with her on a bed that pulled out from the couch. When she woke up, appellant was trying to put his penis in her vagina. (Tr. 342.) This was the first time that appellant had done something like this to her.

{¶ 8} The following day, appellant told his girlfriend that he was taking A.W. to the store. A.W. got into appellant's truck, believing that they were, in fact, going to the store. She was sitting in the passenger seat of the truck, and appellant told

her to sit on the bed of the truck and lean back.  Appellant started unbuttoning her pants, but she told him to stop, and he complied.

{¶ 9} Approximately four months after the July 2016 incidents, another incident occurred at J.H.'s house on East 120th Street in Cleveland, Ohio.  A.W. explained,

> I was laying on the couch.
>
> [Appellant] grabbed my leg, got between my legs, and he — for about 15 minutes he was sitting there trying to put his penis in my vagina. Then he finally did.

(Tr. 353.)  Appellant also sucked on A.W.'s breasts, and performed oral sex on her. Appellant stopped assaulting her after he ejaculated.  (Tr. 355.)  A.W. opined that approximately 80 similar incidents occurred between her and appellant.  She confirmed that during all of these incidents, appellant put his penis into her vagina and also did "other things." (Tr. 356.)

{¶ 10} A.W. testified that appellant was a truck driver, and as a result, the incidents would occasionally occur months apart.  She confirmed, however, that every time appellant returned from driving his truck, an incident would occur.

{¶ 11} The next incident that A.W. was able to recall occurred when appellant persuaded J.H. to let A.W. spend the night in his "big truck."  (Tr. 359.) They got into appellant's big truck and appellant took off her shirt and all of her clothing and he removed his clothing as well.  A.W. was laying down and appellant "came and laid down and he just kept touching [her]."  (Tr. 360.)  A.W. explained,

"[h]e kept saying come on and I just — I just kept saying no. I kept saying no. And I made up an excuse saying I was on my period." (Tr. 360-361.)

{¶ 12} Another incident occurred when A.W. was in her room getting ready for school. Appellant was at J.H.'s house and wanted to have sex with A.W. A.W. explained "every time [appellant] came into town it would happen. He would want to have sex." (Tr. 362.) During this incident, appellant laid A.W. on the couch, and performed cunnilingus and vaginal sex with A.W. A.W. testified that she performed oral sex on appellant. A.W. was 13 years old at the time of this incident.

{¶ 13} Another incident occurred when A.W. came home from school one day. Appellant was laying on the couch in J.H.'s house watching television. Appellant told her to "come here" and asked her to have sex with him. (Tr. 368.) She told him no because her mom was in the house. Appellant pulled down her pants and began performing cunnilingus on her. Appellant proceeded to put his penis into her vagina and had sex with her. A.W. was 13 years old and in the seventh grade at the time.

{¶ 14} The last specific incident that A.W. testified about at trial occurred in January or February 2018, when she was 14 years old. This incident occurred a few days before A.W. disclosed the abuse to her teacher. On this occasion, appellant had sex with her. (Tr. 377-378.)

{¶ 15} Appellant testified on his own behalf at trial. He confirmed that he heard A.W.'s trial testimony and the allegations made against him. Appellant

asserted that he was not guilty of any of the charges alleged in the indictment. (Tr. 650-651.)

{¶ 16} The jury began its deliberations on November 1, 2018. On November 2, 2018, the jury returned a guilty verdict on Counts 1, 2, 3, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 19. The jury returned a verdict of not guilty on Counts 4, 5, 6, 7, and 8. The trial court set the matter for sentencing.

{¶ 17} The trial court held a sentencing hearing on November 15, 2018. The trial court determined that Counts 2 and 3 merged; Counts 12, 13, and 14 merged; and Counts 18 and 19 merged. The trial court imposed an aggregate prison sentence of 25 years to life: 25 years to life on Count 1, 10 years to life on Count 2, 25 years to life on Count 9, 25 years to life on Count 10, 25 years to life on Count 11, 25 years to life on Count 12, and 11 years on Counts 15, 16, 17, and 18.

{¶ 18} The trial court ordered Counts 1, 9, 10, 11, and 12 to run concurrently to one another; the trial court ordered Counts 15, 16, 17, and 18 to run concurrently to one another; and the trial court ordered the concurrent sentence on Counts 1, 9, 10, 11, and 12 to run consecutively to the concurrent sentence on Counts 15, 16, 17, and 18. The trial court determined that appellant is a Tier III sex offender and reviewed the reporting requirements with appellant.

{¶ 19} Appellant filed an appeal challenging the trial court's judgment on November 26, 2018. On January 15, 2019, the trial court issued a nunc pro tunc sentencing entry reflecting an aggregate prison term of 36 years to life, rather than the aggregate prison term of 25 years to life reflected in the original sentencing entry.

{¶ 20} On July 26, 2019, this court remanded the matter to the trial court for a nunc pro tunc sentencing entry reflecting the individual sentences imposed on Counts 15, 16, 17, and 18. This court explained that the trial court's November 16, 2018 sentencing entry imposed a blanket 11-year prison sentence on these counts.

{¶ 21} On August 2, 2019, the trial court issued a nunc pro tunc sentencing entry correcting the sentences imposed on Counts 15, 16, 17, and 18. The trial court's sentencing entry provides, in relevant part: "Counts 15, 16, 17, 18: 11 years; 5 years mandatory [postrelease control]. Count 19: merges into Count 18. Counts 1, 9, 10, 11, 12 to run concurrent with each other. Counts 15, 16, 17, 18 to run concurrent with each other, and run concurrent to all other counts."

{¶ 22} In this appeal, appellant assigns four errors for review:

I. The trial court erred by denying appellant's Crim.R. 29 motions because there was insufficient evidence to support the convictions.

II. The convictions were against the manifest weight of the evidence.

III. The trial court erred when it did not comply with the mandates of Crim.R. 32 which afford the defendant his right of allocution before sentencing is imposed.

IV. Appellant's sentencing is contrary to law and the record does not support the imposition of consecutive sentences.

## II. Law and Analysis

### A. Sufficiency

{¶ 23} In his first assignment of error, appellant argues that his convictions were not supported by sufficient evidence and that the trial court erred by denying defense counsel's Crim.R. 29 motion for a judgment of acquittal.

> Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of the evidence require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).
>
> The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

*Cleveland v. Battles*, 8th Dist. Cuyahoga No. 104984, 2018-Ohio-267, ¶ 11-12.

{¶ 24} In this appeal, appellant specifically challenges the sufficiency of the evidence with respect to the rape offenses charged in Counts 1, 12, and 18, and the attempted rape offense charged in Count 2.

### 1. Venue

{¶ 25} First, appellant argues that the state failed to prove that venue in Cuyahoga County was proper regarding Counts 1 and 2. In support of his argument,

appellant maintains that these offenses "started and ended in Summit County." Appellant's brief at 11.

{¶ 26} Ohio Constitution, Article I, Section 10, provides an accused the right to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." This constitutional provision "'fixes venue, or the proper place to try a criminal matter.'" *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 19, quoting *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983) (explaining that the venue provision of the Ohio Constitution embodies the rule "that the place of trial is to be where the offense occurred.")

{¶ 27} Venue is a fact that must be proved beyond a reasonable doubt in criminal prosecutions unless it is waived by the defendant. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 149. When the evidence is insufficient for reasonable minds to find that venue is proper, a motion for judgment of acquittal must be granted. *Hampton* at ¶ 24. "Venue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." *State v. Chintalapalli*, 88 Ohio St.3d 43, 45, 723 N.E.2d 111 (2000).

{¶ 28} R.C. 2901.12(H), governing venue in a criminal case, provides, in relevant part,

> (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim, or victims of the same type or from the same group.

(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

{¶ 29} In the instant matter, defense counsel moved for a Crim.R. 29 judgment of acquittal on Counts 1 and 2 during trial, arguing that these offenses purportedly occurred in a truck that was not in Cuyahoga County. The state opposed defense counsel's venue argument, arguing that appellant engaged in a "course of criminal conduct" pursuant to R.C. 2901.12(H)(1), (2), and (3).

{¶ 30} After reviewing the record, we find that venue was proper in Cuyahoga County because appellant committed the offenses charged in the indictment as part of a criminal course of conduct. It is undisputed that the offenses charged in Counts 1 and 2 occurred at appellant's girlfriend's house in Akron, Ohio (Summit County). A.W. confirmed at trial that the incidents pertaining to Counts 1 and 2 occurred at appellant's girlfriend's house, and that his girlfriend lived in Akron, Ohio. (Tr. 337.)

{¶ 31} Nevertheless, all 19 counts in the indictment pertained to the same victim, A.W. All 19 offenses were committed by appellant, in his relationship as A.W.'s "great uncle." (Tr. 639.) Finally, appellant committed the offenses charged in the indictment in furtherance of the same purpose or objective. As the state emphasized in opposing defense counsel's Crim.R. 29 motion based on improper venue, "[o]ver the course of the 18 months, the incidents that we have indicted, the same acts occurred over and over again." (Tr. 639.)

{¶ 32} For all of these reasons, we find that the state proved, beyond a reasonable doubt, a sufficient nexus between appellant and Cuyahoga County, and that venue in Cuyahoga County was proper pursuant to R.C. 2901.12(H) based on appellant's course of criminal conduct. Accordingly, appellant's first assignment of error is overruled in this respect.

## 2. Digital Penetration

{¶ 33} Second, appellant argues that his rape convictions on Counts 12 and 18, involving anal digital penetration, were not supported by sufficient evidence.[1] Specifically, appellant argues that there was a lack of testimony from A.W. regarding anal digital penetration, and that Goellnitz's report, which indicated that there was anal penetration with appellant's fingers, was insufficient to prove digital anal penetration beyond a reasonable doubt. Appellant also appears to argue that the state never moved to amend Counts 12 and 18 in the indictment to conform to the evidence presented at trial.

{¶ 34} Count 12 alleged that appellant committed the offense of rape, specifically anal digital penetration, in violation of R.C. 2907.02(A)(1)(b), on or about August 15, 2016 to January 6, 2017. R.C. 2907.02(A)(1)(b) provides, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from

---

[1] Defense counsel also moved for a Crim.R. 29 judgment of acquittal on Count 7 at trial, which also alleged anal digital penetration. The jury acquitted appellant on Count 7, so our analysis will be limited to Counts 12 and 18.

the offender, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶ 35} Count 18 alleged that appellant committed the offense of rape, specifically anal digital penetration, in violation of R.C. 2907.02(A)(2), on or about January 7, 2017 to February 1, 2018. R.C. 2907.02(A)(2) provides, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 36} In support of the Crim.R. 29 motion on Counts 12 and 18 during trial, defense counsel argued:

> As it relates to [Counts 12 and 18], the indictment does specify this specific type of sexual activity. They have delineated it throughout this indictment equaling a 19-count indictment.
>
> [A.W.] provided no testimony whatsoever regarding anal penetration, digital or otherwise. She had many opportunities to do so. She was asked numerous times to describe what happened. She never did that. There is a box checked by the nurse and that's it.

(Tr. 647.)

{¶ 37} Defense counsel acknowledged that the box checked in Goellnitz's report indicated anal penetration, but argued that the report was the only testimony pertaining to these counts: "[A.W.] is the person who should have provided any testimony regarding [Counts 12 and 18] and she did not. There was no testimony other than this checked box regarding that." (Tr. 647.)

{¶ 38} In opposing defense counsel's motion, the state acknowledged that A.W. did not specifically testify that appellant digitally penetrated her anus. However, the state argued that these counts should be submitted to the jury because

Goellnitz's report indicates that appellant committed the offense of digital anal penetration, and based on this evidence reasonable minds could reach different conclusions as to whether each material element of the crimes charged in Counts 12 and 18 had been proved beyond a reasonable doubt. Finally, the state argued that it met its burden of proof on these counts based on Goellnitz's report and testimony during trial. After considering the parties' arguments as it pertained to the rape offenses alleging anal digital penetration, the trial court denied defense counsel's Crim.R. 29 motion on Counts 7, 12, and 18. (Tr. 648.)

{¶ 39} In the instant matter, appellant argues that A.W. did not testify that appellant engaged in digital anal penetration, and that Goellnitz's report was insufficient to prove that he committed the offenses charged in Counts 12 and 18 beyond a reasonable doubt. In support of his sufficiency challenge on these counts, appellant directs this court to *State v. Brown*, 8th Dist. Cuyahoga No. 99024, 2013-Ohio-3134.

{¶ 40} In *Brown*, the defendant-appellant was charged with four counts of rape: one count alleging vaginal penetration and three counts alleging anal penetration. This court acknowledged that "[t]here is no dispute that the state failed to present evidence of three anal rapes[.]" *Id.* at ¶ 25. Furthermore, the state did not move to amend the indictment, pursuant to Crim.R. 7, to conform to the victim's trial testimony,[2] nor did the trial court amend the indictment sua sponte. *Id.* This

---

[2] The victim testified at trial that the defendant vaginally raped her on two occasions and anally raped her on two occasions. *Id.* at ¶ 26.

court explained that the forms of rape charged in the indictment, one count of vaginal rape and three counts of anal rape, were "patently inconsistent with the facts revealed at trial[.]" *Id.* at ¶ 27. This court vacated appellant's conviction for a third anal rape, concluding that the state failed to present sufficient evidence to sustain a third conviction for anal rape. *Id.* at ¶ 38, 75.

{¶ 41} After reviewing the record, we find appellant's reliance on *Brown* to be misplaced. It is undisputed that A.W. did not testify that appellant anally penetrated her with his fingers. However, unlike *Brown*, this case does not involve an inconsistency between the forms of rape charged in Counts 12 and 18 — anal digital penetration — and the facts adduced at trial. The forms of rape alleged in Counts 12 and 18 were consistent with Goellnitz's report and her trial testimony.

{¶ 42} Goellnitz examined A.W. on February 9, 2018. She completed a "sexual assault medical/forensic record" that was admitted at trial as state's exhibit No. 45. The report identified A.W.'s assailant as "Larry Davis," and indicated that the assailant's relationship to A.W. was "great uncle." The report provided that the date and time of the assault was "[ongoing] July 2016 — last encounter 2/7 or 2/8[/2018]."

{¶ 43} The report contained a "patient history" that provided, in relevant part:

> [Goellnitz] asked [A.W.] why she came to hospital. [A.W.] — "I was assaulted." * * * "About 1-2 [years] ago, my uncle was a truck driver came to town." "So [we] went to his girlfriend's house. * * * He + I (uncle + [A.W.]) slept on a couch that is like a bed," "I fell asleep + I woke up to him putting his stuff in me" * * * "The next day I was in his

truck." "He tried to unbutton my pants." I said no I got out of the truck * * * "I think about 1 month later at my grandmother's house he lifted my shirt + stared at my chest" 1 month later he actually did it." "It hurt I told him stop he stopped then tried it again." 2-3 months later he started doing it but did not stop." * * * "A month ago I was sleeping downstairs he was mad and poured water on my face to wake me up" * * * "The next day he made me do it." 1 week ago my mom took my sister to school "he did it then." "Yesterday or the day before he was licking me down there" "I told my gym teacher," He (gym teacher) told me he had to report it. My mom went to parent teacher conference. I had 2 F's. I was scared. My mom was upset about school. I told her "you have not been through what I have been" "Then I told her I was raped or molested or whatever it is called." [Goellnitz] clarified — When you said "I woke up to him putting his stuff in me" [Goellnitz asked for A.W.] to explain that. [A.W.] covered her face kicked her feet then said "his dick in my vagina." [Goellnitz] — you later told me "1 month later he actually did it" [Goellnitz asked] what does that mean to you. "He put it in my vagina" "He had sex with me" "The other day it was about 8[:00 in the morning] he called me on my phone "I was upstairs he was down" He grabbed my arm + said we [do not] have a lot of time." "He was making me mad" He pulled me on the couch took off my pants I was just laying there huffing + puffing. He was licking me down there [A.W.] pointed to vagina area.

State's exhibit No. 45 at p. 2-3.

{¶ 44} The report also contained a "history during the assault" section. In this section, Goellnitz documented that (1) there was vaginal penetration by the assailant's penis, (2) anal penetration by the assailant's fingers, and (3) oral penetration involving the assailant's penis. *Id.* at p. 4. In the report's "physical assessment" section, Goellnitz documented that A.W. "struggled to say dick to vagina — covered face kicked [feet]."

{¶ 45} The following exchange took place between the prosecutor and Goellnitz during trial:

[STATE]: You indicated that as you go through the exam you asked [A.W.] what different types of penetration of this assault had taken place, correct?

[GOELLNITZ]: Correct.

[STATE]: Can we go through those right now and what did she indicate to you?

[GOELLNITZ]: Okay. After I have obtained the history and had a disclosure I can openly ask was there vaginal penetration by the assailants with his fingers.

She said no.

With the penis?

Yes.

Object?

No.

*Then I asked about anal penetration with his fingers and the answer was yes.*

Penis?

No.

Object?

No.

Oral penetration by the assailant with his fingers into her oral cavity?

No.

His penis?

Yes.

Objects?

No.

(Emphasis added.)  (Tr. 526-527.)

{¶ 46} Goellnitz testified during cross-examination that A.W. did not discuss anal penetration during her narrative.  However, she explained that when she specifically asked A.W. whether there had been anal penetration, A.W. said yes, and as a result, she circled "yes" regarding anal penetration in her report.  (Tr. 545-546.)

{¶ 47} On redirect examination, Goellnitz confirmed that A.W. disclosed to her that appellant had put a finger in her anus when she was completing her examination and going through a checklist:  "I'm going through a checklist, and yes, [A.W.] answered yes to [the assailant putting a finger in her anus]."  (Tr. 553.)

{¶ 48} Goellnitz explained at trial that when both children and adults are giving a narrative of ongoing abuse, they do not include every single incident or fact:

> The best description is like [victims] put their thoughts on Post-it notes and then you take those Post-it notes and throw them up in the air and then just randomly pick them up and put them on a board.  It can be very erratic.  It can be very precise on specific events and bypass complete other events.
>
> As far as time of when it happened it is very hard for children to put it in a chronological age.

(Tr. 518-519.)

{¶ 49} Regarding her examination and the narrative provided by A.W., Goellnitz testified that A.W. "was very cooperative.  Very open.  She did a very good testimony of a timeline.  She really struggled very hard as she kicked and pulled the blanket up to her face because *she was struggling to tell me the words, you know, that she was sexually assaulted in her own words*."  (Emphasis added.)  (Tr. 537.)

**{¶ 50}** Finally, during her trial testimony, A.W. opined that in total, approximately 80 sexual incidents occurred between her and appellant. (Tr. 356.)

> It is well established that "'circumstantial evidence is sufficient to sustain a conviction if the evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990). Circumstantial evidence is proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow. *State v. Beynum*, 8th Dist. Cuyahoga No. 69206, 1996 Ohio App. LEXIS 2143 (May 23, 1996).

*State v. Bey*, 8th Dist. Cuyahoga No. 106745, 2019-Ohio-1884, ¶ 73.

**{¶ 51}** After reviewing the record, we find that the state presented sufficient evidence, if believed, to prove the elements of the rape offenses charged in Counts 12 and 18 beyond a reasonable doubt. Based on the direct evidence presented by the state at trial — Goellnitz's report and trial testimony, and A.W.'s testimony — the jury could have reasonably inferred that appellant committed the rape offenses charged in Counts 12 and 18.

**{¶ 52}** Accordingly, we find that appellant's convictions on Counts 12 and 18 were supported by sufficient evidence. Appellant's first assignment of error is overruled in this respect.

## B. Manifest Weight

{¶ 53} In his second assignment of error, appellant argues that his convictions for rape, attempted rape, kidnapping, and sexual battery were against the manifest weight of the evidence.

{¶ 54} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 47, quoting *Thompkins* at 387.

{¶ 55} In support of his manifest weight challenge, appellant argues that the jury lost its way in relying on A.W.'s testimony. He contends that A.W.'s mother, J.H., testified that A.W. had a history of lying to get what she wanted. (Tr. 294.) Appellant appears to suggest that A.W. fabricated the allegations against him in order to avoid getting into trouble or punished for her grades and conduct in school.

{¶ 56} The following exchange took place between J.H. and defense counsel during cross-examination:

[DEFENSE COUNSEL]: Does [A.W.] have a history of lying?

[J.H.]: Yes.

[DEFENSE COUNSEL]: Under what circumstances?

[J.H.]: To get whatever it is kind of she wants.

(Tr. 294.)   Subsequently, however, J.H. characterized A.W.'s history as that of a teenager rather than a liar.

{¶ 57} Appellant appears to argue that A.W.'s testimony was not credible or believable, and that her "history of lying" casts doubt on the veracity of her testimony.  Appellant further contends that A.W. fabricated the allegations against him in order to avoid getting into trouble or punished for her grades and conduct in school.

{¶ 58} J.H. testified about the information she learned from A.W.'s school during parent-teacher conferences in February 2018: "Again, grades were bad and every teacher had something to say as far as her attitude, her really not paying attention in class.  They know she's capable of doing it but she just wasn't doing it. Her grades were out of this world."  (Tr. 269.)   J.H. confronted A.W. about her grades and her attitude in school, and asked if something was going on with her. A.W. eventually opened up to J.H. and informed her that "[U]ncle Larry" had been touching her.  (Tr. 273-274.)

{¶ 59} After reviewing the record, we find no basis upon which to conclude that appellant's convictions are against the manifest weight of the evidence.  A.W.'s account of the incidents involving appellant remained largely consistent over time.

A.W.'s testimony was consistent with and corroborated by other evidence presented at trial. Furthermore, the jury was in the best position to assess the credibility of A.W. and her proffered testimony.

{¶ 60} The testimony of J.H., Makin, Goellnitz, and DNA analyst Hristina Lekova is consistent with A.W.'s version of the events that she had been sexually abused by appellant, and contradicts appellant's theory of the case that A.W. fabricated the allegations against him in order to avoid getting into trouble or punishment for her grades or behavior in school.

{¶ 61} First, as noted above, J.H. testified that A.W. eventually opened up to her and disclosed that "somebody's touching me." (Tr. 274.) A.W. indicated that appellant was the person that had been touching her. J.H. explained that A.W. went into detail and confirmed that appellant was touching her inappropriately, making her touch him, and engaging in sexual intercourse with her. (Tr. 274.)

{¶ 62} Second, Makin asserted that he had a conversation with A.W. around October 2017, approximately ten weeks into the school year, about the issues that were going on in A.W.'s home: "Well, for a couple weeks [A.W.] kept coming to me and saying, I got to talk to you about something. * * * And then finally one morning before school starts * * * [A.W.] came up to me and she was visibly upset and she said, I need to talk to you now." (Tr. 489.) Regarding his statement that A.W. was visibly upset on this occasion, he explained, "[s]he was very teary eyed and red eyed and she was very anxious, breathing hard and everything." (Tr. 490.) He testified that they went to a quiet location, and "[A.W.] sat down on the floor which was

unusual and she told me that her uncle was raping her. That's exactly what she said." (Tr. 490.) Within minutes of A.W.'s disclosure, Makin reported the incident to the authorities.

**{¶ 63}** Third, as noted above, Goellnitz testified at trial that A.W. provided a narrative to her during which she indicated that appellant penetrated her vaginally, anally, and orally. Goellnitz explained that A.W. described the assault as "ongoing. To the best of [A.W.'s] time frame it was about July 2016 and the last encounter was either on February 7th or 8th [2018]." (Tr. 512.)

**{¶ 64}** Fourth, Lekova, a forensic DNA analyst, testified that she processed the DNA evidence and issued two reports pertaining to A.W.'s case. Lekova testified that she obtained a DNA match between appellant's DNA profile and a dried stain obtained from A.W.'s breast.

**{¶ 65}** Although this court reviews credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is uniquely situated to view the witnesses' demeanor, gestures, facial expressions, and voice inflections. "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-

2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709 (Aug. 22, 1997).

{¶ 66} The jury heard J.H.'s testimony about A.W. lying in the past to get what she wanted. Accordingly, the jury had sufficient information to assess the credibility of all of the witnesses, including A.W.

{¶ 67} Appellant's convictions are not against the manifest weight of the evidence merely because the jury rejected the defense's theory that A.W. fabricated the allegations against appellant to avoid getting into trouble and found the state's version of the events to be more believable. "'[A] conviction is not against the manifest weight of the evidence simply because the jury rejected the defendant's version of the facts and believed the testimony presented by the state.'" *State v. Jallah*, 8th Dist. Cuyahoga No. 101773, 2015-Ohio-1950, ¶ 71, quoting *State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 28.

{¶ 68} For all of the foregoing reasons, we find no basis upon which to conclude that this is the exceptional case in which the jury clearly lost its way or that the evidence weighs heavily against appellant's convictions. Accordingly, appellant's second assignment of error is overruled.

## C. Crim.R. 32/Allocution

**{¶ 69}** In his third assignment of error, appellant argues that the trial court erred by failing to comply with Crim.R. 32 and denying appellant his right to allocution prior to the imposition of sentence.

**{¶ 70}** The state concedes appellant's third assignment of error, acknowledging that there is no indication that appellant was given his right to allocute under Crim.R. 32(A). Accordingly, the state asserts that this matter should be remanded to the trial court "for the limited purposes to permit [a]ppellant to allocute if he chooses to do so." Appellee's brief at 9. The state further requests that the matter be remanded "to resentence for the limited purposes of allocution." Appellee's brief at 11.

**{¶ 71}** Crim.R. 32(A)(1) provides that, at the time of imposing sentence, the trial court shall, "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." *State v. Melendez*, 8th Dist. Cuyahoga No. 106994, 2019-Ohio-533, ¶ 18.

> At the time of sentencing, the trial court must directly address the defendant and ask whether he or she wishes to make a statement or present information in mitigation of punishment. Crim.R. 32(A)(1). If the court imposes sentence without affording the defendant an opportunity to allocute, then resentencing is required unless the error was invited or harmless. [*State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 179]. A defendant may waive the right to speak in allocution. *State v. Campbell*, 90 Ohio St.3d 320, 325, 2000-Ohio-183, 738 N.E.2d 1178 (2000).

*State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 200.

{¶ 72} The purpose of allocution is "to permit the defendant to speak on his [or her] own behalf or present any information in mitigation of punishment." *State v. Reynolds*, 80 Ohio St.3d 670, 684, 687 N.E.2d 1358 (1998). The Ohio Supreme Court explained that Crim.R. 32 "does not merely give the defendant a right to allocution; it imposes an affirmative requirement on the trial court to 'ask if he or she wishes to' exercise that right." *Campbell* at 324.

{¶ 73} In the instant matter, before imposing its sentence, the trial court heard statements from both of appellant's defense attorneys and the prosecutor. The trial court did not directly address appellant or ask whether he wanted to exercise his right of allocution and make a statement, as required by Crim.R. 32(A)(1). The trial court failed to ask appellant if he wished to make a statement on his own behalf or in mitigation before the imposition of sentence. Nor is there any indication that appellant waived his right to speak in allocution.

{¶ 74} "The remedy for a violation of one's right of allocution is to vacate the sentence, remand for resentencing, and provide the defendant an opportunity to speak prior to the resentencing." *Garfield Hts. v. Marbury*, 8th Dist. Cuyahoga No. 103849, 2016-Ohio-7960, ¶ 8, citing *State v. Cook*, 8th Dist. Cuyahoga No. 85186, 2005-Ohio-4010, ¶ 6-7.

{¶ 75} Based on the foregoing analysis, appellant's sentence is vacated and the matter is remanded to the trial court for resentencing consistent with the

requirements of Crim.R. 32(A)(1). Our resolution of appellant's third assignment of error renders appellant's fourth assignment of error moot.

### III. Conclusion

{¶ 76} After thoroughly reviewing the record, we affirm appellant's convictions. Appellant's convictions were supported by sufficient evidence, and the trial court did not err in denying defense counsel's Crim.R. 29 motion for a judgment of acquittal. Appellant's convictions are not against the manifest weight of the evidence.

{¶ 77} Notwithstanding the requirements set forth in Crim.R. 32(A)(1), the trial court failed to provide appellant the opportunity to address the court prior to the imposition of sentence. The state concedes this error. Accordingly, appellant's sentence is vacated. The matter is remanded to the trial court for resentencing.

{¶ 78} Judgment affirmed in part, vacated in part, and remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
EILEEN A. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

EILEEN A. GALLAGHER, J., CONCURRING IN PART; DISSENTING IN PART:

{¶ 79} I concur, in part, and dissent in part.

{¶ 80} I concur with the decision of this court as to the second, third and fourth assignments of error.

{¶ 81} I dissent, however, as to the first assignment of error only as to the counts of rape alleged in Counts 12 and 18.

{¶ 82} A.W. testified with specificity as to dates and locations of the crimes committed against her. She was specific as to the forcible acts of the appellant. She never testified, however, as to anal penetration which was charged in the indictment.

{¶ 83} The failure of the victim to provide such testimony and its admission only through a third party, albeit a healthcare provider, in my opinion is not sufficient to sustain a conviction.