[Cite as *State v. Johnson*, 2019-Ohio-5335.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                      :

                                    No. 107929

    v.                                            :

QUANTRAIL JOHNSON,                         :

    Defendant-Appellant.                 :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 26, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-628906-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brandon Piteo and Tasha L. Forchione, Assistant Prosecuting Attorneys, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and David Martin King, Assistant Public Defender, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Quantrail Johnson ("Johnson") appeals his conviction following a bench trial. For the reasons that follow, we affirm.

## Procedural and Substantive History

{¶ 2} This case stems from a shooting that occurred on April 15, 2018. That day, Jason Gain ("Gain") and his girlfriend Monalisa McCoy ("McCoy") went to McCoy's father's house on Nevada Avenue in Cleveland, Ohio, to do laundry. Gain had been staying at this house before he moved in with McCoy, and Johnson was staying at this house on the date of the incident. Johnson and Gain were friends, and McCoy met them both through her father.

{¶ 3} McCoy testified that she started her laundry and then went outside and sat in her car. Johnson came outside and asked her if she could take him to get some of his belongings. She told him to ask Gain if it was all right for her to do so. Johnson went back inside the house and, shortly thereafter, returned to McCoy's car and got in on the passenger side. McCoy began to drive away and called Gain. Hearing that Gain was upset, McCoy turned around and went back to her father's house. McCoy and Johnson went back inside the house, and Johnson began arguing with Gain. Gain went outside to his truck, and Johnson followed him outside to continue the argument. Several minutes later, Johnson came back inside. At this point, McCoy had called her father to come home because Gain and Johnson's argument was escalating and she was nervous about what might happen. McCoy testified that she witnessed Johnson retrieve a shotgun from inside the house, load the gun, and go back outside. McCoy went to the bathroom, called her father again, and then heard a gunshot and proceeded to call 911. McCoy then went outside,

where she observed Johnson standing over Gain, who had been shot and was tying a pair of pants around his leg to stop the bleeding.

{¶ 4} Gain testified that he had gone out to his truck to drink a Mike's Hard Lemonade and Johnson approached him and pointed a shotgun in his face. Gain testified that he tried to grab the gun and then was shot in his leg. Gain testified that Johnson helped him tie up his leg and that McCoy drove Gain to the hospital. At the hospital, police interviewed Gain and McCoy. Both stated in their initial interviews that they did not know the identity of the person who shot Gain. At trial, Gain testified that he had been reluctant to tell police that his friend had shot him. McCoy testified that Gain told her not to identify Johnson to the police. Both identified Johnson as the shooter at trial.

{¶ 5} Johnson was arrested on May 15, 2018. On May 22, 2018, the Cuyahoga County Grand Jury indicted Johnson on one count of felonious assault in violation of R.C. 2903.11(A)(2), one count of felonious assault in violation of R.C. 2903.11(A)(1), one count of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). The first three counts carried one- and three-year firearm specifications. Johnson was appointed counsel, and pretrial hearings were held on May 31, 2018; June 11, 2018; July 2, 2018; July 19, 2018; July 26, 2018; and August 2, 2018. At each of these hearings, defense counsel requested a continuance for discovery and ongoing negotiations, and the trial court granted each continuance.

{¶ 6} On August 8, 2018, Johnson filed a pro se "notice to deny consent to any continuances 'at the request of the defendant'" and a motion to dismiss. On August 29, 2018, the trial court overruled Johnson's pro se motion to dismiss. On September 27, 2018, Johnson waived his right to a jury trial and the case proceeded to a bench trial. On September 28, 2018, the court found Johnson guilty of both counts of felonious assault with one- and three-year firearm specifications, and one count of having weapons while under disability. The court found Johnson not guilty of discharge of a firearm on or near prohibited premises.

{¶ 7} On October 29, 2018, the court held a sentencing hearing. Both counts of felonious assault were merged for sentencing, and the court imposed a sentence of three years for felonious assault, to be served consecutively to three years for the firearm specifications and concurrently to one year for having weapons while under disability, for an aggregate prison term of six years.

{¶ 8} Johnson now appeals, presenting six assignments of error for our review.

**Law and Analysis**

**I. Manifest Weight**

{¶ 9} In his first assignment of error, Johnson argues that his convictions were against the manifest weight of the evidence. Specifically, Johnson challenges the credibility of both eyewitnesses and emphasizes that only one witness, the victim, actually saw the shooter.

{¶ 10} Unlike a challenge to the sufficiency of evidence, a manifest-weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When reviewing a manifest weight challenge, a court reviews the entire record, weighing all evidence and reasonable inferences and considering the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d, 380, 387, 678 N.E.2d 541 (1997).

{¶ 11} In asserting that his conviction was against the manifest weight of the evidence, Johnson argues that the police investigation in the case was lacking and that the eyewitness testimony was not credible. With respect to the investigation, any allegations of inadequate police work have no bearing on whether Johnson's conviction was against the manifest weight of the evidence. A manifest weight challenge looks at the quality of the evidence that the state presented at trial. A consideration of evidence that was not presented against Johnson at trial, regardless of why it was not presented, is irrelevant to our review of this assignment of error.

{¶ 12} With respect to the testimony from McCoy and Gain, Johnson emphasizes minor inconsistences in their testimony. While we acknowledge the inconsistencies in their testimony, a thorough review of the record reveals that as to the critical questions in this case, the witnesses provided consistent and generally credible testimony. McCoy testified that she saw Johnson load a gun and go outside,

and shortly thereafter she heard a gunshot. Gain testified that Johnson shot him. Additionally, no evidence was presented at trial to suggest that anyone other than Johnson shot Gain. We do not find that any of the alleged inconsistencies in the witness testimony significantly undermined the witnesses' credibility so as to have created a manifest miscarriage of justice. In light of the foregoing, we do not find that Johnson's convictions were against the manifest weight of the evidence. Johnson's first assignment of error is overruled.

## II. Prosecutorial Misconduct

{¶ 13} In Johnson's second assignment of error, he argues that certain statements the prosecutor made during her opening statement constituted misconduct and violated Johnson's right to a fair trial. Johnson argues that the prosecutor mischaracterized McCoy's testimony by stating that McCoy witnessed the shooting. He also argues that the prosecutor mischaracterized the nature of Gain's injuries by referring to the gunshot as causing a fatal wound. In her opening statement, the prosecutor summarized the incident and investigation as follows:

> [T]he Court will hear from Jason Gain as well as other witnesses to this matter that [on] or about April 15th, 2018, he was shot in his leg by the defendant, Quantrail Johnson. It was witnessed by his girlfriend, Monalisa McCoy. And he bled out.
>
> Bled out. And he was driven to the hospital by his girlfriend, Monalisa McCoy. He had to undergo very severe surgery. Currently, had to have plates installed in his leg for this.
>
> And that victim, Jason Gain, did meet with the officers. He's been cooperative through this whole process. Even provided detectives photographs of the defendant and named him as the person who administered that fatal wound.

Johnson argues that these mischaracterizations were intentional and inflammatory. With respect to the description of the injury, Johnson argues that the only interpretation of the prosecutor's words is that death was caused by the injury inflicted.

{¶ 14} In order to find prosecutorial misconduct, this court must determine that the prosecutor's comments were improper and that they prejudiced Johnson's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984). During opening and closing statements, prosecutors are entitled to some latitude as to what the evidence will show or has shown and what inferences can be drawn. *State v. Richey*, 64 Ohio St.3d 353, 362, 595 N.E.2d 915 (1992). Further, the focus of our analysis is on the "fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 15} Johnson is correct that McCoy did not witness the shooting itself. Johnson is also correct that the shooter in this case did not inflict a fatal wound on Gain. We disagree that any reference to either by the prosecutor constitutes prosecutorial misconduct. Johnson characterizes the conduct in this case as "a desire to couch the matter as a murder with direct eyewitnesses." This argument is undermined by the context of both the opening statement and the trial as a whole. The prosecutor made it clear that Gain did not die as a result of the gunshot by describing his injuries in detail. Further, of course, Gain's presence and testimony at trial would certainly have been sufficient to negate any attempt by the prosecutor

to make his injuries seem worse than they were. In addition, it is clear from McCoy's testimony that she did not witness the shooting itself.

{¶ 16} Even if we were to conclude that the prosecutor's statements were improper, Johnson has not shown how the statements had any impact on the trier of fact — in this case, the judge — let alone a prejudicial impact. Whether Gain was the victim of a gunshot wound and the severity of his injuries were not issues to be determined by the trier of fact in this case. The primary issue in this case was the identity of the shooter, and the state presented ample evidence that Johnson shot Gain. Therefore, the prosecutor did not commit misconduct that denied Johnson due process. Johnson's second assignment of error is overruled.

## III. Access to the Proceedings

{¶ 17} In Johnson's third assignment of error, he argues that he was denied due process when the court denied him access to pretrial proceedings and granted continuances despite his notice to the court that he would not consent to any continuance.

{¶ 18} While a defendant "'has a fundamental right to be present at all critical stages of his criminal trial[,]'" this right is not absolute. *State v. White*, 82 Ohio St.3d 16, 26, 693 N.E.2d 772 (1998), quoting *State v. Hill*, 73 Ohio St.3d 433, 444, 653 N.E.2d 271 (1995), and citing *State v. Meade*, 80 Ohio St.3d 419, 421, 687 N.E.2d 278 (1997). Even if a defendant has the right to be present at a given stage, his absence only constitutes prejudicial error where "a fair and just hearing * * * [is] thwarted by his absence." *Snyder v. Massachusetts*, 291 U.S. 97, 107-108, 54 S.Ct.

330, 78 L.Ed. 674 (1934).  Here, Johnson has not articulated any way in which his due process rights were particularly impacted by his absence from pretrial hearings.

{¶ 19} Johnson argues that because he made clear his desire to be present for all proceedings, the trial court's failure to provide him access to pretrial proceedings is error.  Johnson's desire to be present for pretrial proceedings does not alone amount to prejudicial error.  Therefore, Johnson's third assignment of error is overruled.  To the extent that Johnson also argues that his stated desire that the trial court not grant any further continuances has somehow violated his due process right to be present at pretrial proceedings, we do not see his stated desire relating to continuances alone leads to the trial court's orders violating his constitutional or statutory rights.  We will address this issue more thoroughly in the following assignment of error.

## IV. Speedy Trial

{¶ 20} In Johnson's fourth assignment of error, he argues that he was denied his constitutional right to a speedy trial.  Relatedly, Johnson argues that he was denied his right to a preliminary hearing pursuant to Crim.R. 5.

{¶ 21} Crim.R. 5(A)(4) provides:

When a defendant first appears before a judge or magistrate, the judge or magistrate shall permit the accused or the accused's counsel to read the complaint or a copy thereof, and shall inform the defendant:

(4) Of the right to a preliminary hearing in a felony case, when the defendant's initial appearance is not pursuant to indictment.

Crim.R. 5(B)(1) goes on to provide that a preliminary hearing shall be scheduled no later than 10 days following the arrest, but that "[t]he preliminary hearing shall not be held, however, if the defendant is indicted." Here, Johnson was arrested on May 15, 2018, and indicted on May 22, 2018. His indictment, which occurred before the 10-day time period for holding a preliminary hearing had elapsed, negated Johnson's right to a preliminary hearing.

{¶ 22} The Sixth Amendment to the U. S. Constitution, and Article 1, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. Ohio has codified this right in R.C. 2945.71. R.C. 2945.71(C) provides that a person facing felony charges must be brought to trial within 270 days after their arrest. Where, as here, the defendant is jailed in lieu of bail awaiting trial on a pending charge, each day shall be counted as three days pursuant to R.C. 2945.71(E). R.C. 2945.72 sets forth circumstances under which the statutory time period may be tolled, including a continuance at the defendant's request.

{¶ 23} Time began to run on May 15, 2018, when Johnson was arrested. Johnson was granted continuances on May 31, 2018, June 11, 2018, July 2, 2018, July 19, 2018, July 26, 2018, and August 2, 2018, all of which tolled his speedy trial time pursuant to R.C. 2945.72(E). On August 8, 2018, Johnson filed a motion to dismiss, which again tolled his speedy trial time. The court denied this motion on August 29, 2018, and trial began on September 27, 2018. Considering these tolling events, 53 days elapsed between Johnson's arrest and trial. Pursuant to the statutory triple-counting provision, 159 days of the 270-day limit had elapsed.

Therefore, Johnson was brought to trial within the statutory time period and his right to a speedy trial was not violated.

{¶ 24} Johnson also argues that the multiple continuances allowed by the court "at the request of the defendant" were improper because Johnson expressly declined to consent to any continuances and attempted to assert his right to a speedy trial through a pro se notice and motion. We disagree. "'A defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent.'" *State v. Shepherd*, 8th Dist. Cuyahoga No. 97962, 2012-Ohio-5415, ¶ 21, quoting *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978), syllabus. Further, Johnson's notice to the trial court that he denied consent to any continuances was filed after numerous pretrials in which his counsel had requested and received continuances for the reasonable purpose of conducting discovery and engaging in negotiations with the state of Ohio. Finally, as we laid out above, even with numerous continuances operating to toll Johnson's speedy trial time, he was brought to trial within the statutory period. For these reasons, Johnson's fourth assignment of error is overruled.

## V. Ineffective Assistance of Counsel

{¶ 25} In his fifth assignment of error, Johnson argues that he received ineffective assistance of counsel because his attorney failed to object to statements made during the prosecutor's opening statement and failed to move for dismissal on speedy trial grounds.

{¶ 26} To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 687-688.

{¶ 27} We have determined that the prosecutor's comments during opening statements did not constitute prosecutorial misconduct, in part because the statements did not prejudice Johnson. It is entirely possible that counsel had a legitimate strategic reason for not objecting during opening statements. Even assuming arguendo that the failure to object was deficient, Johnson is unable to show how he was prejudiced by this. Johnson has failed to show a reasonable probability of a different outcome had his counsel objected.

{¶ 28} Similarly, we have concluded that Johnson's right to a speedy trial was not violated. Therefore, his argument that his counsel was ineffective for failing to move for dismissal on this ground necessarily fails. For these reasons, Johnson's fifth assignment of error is overruled.

## VI. Cumulative Error

{¶ 29} In Johnson's sixth and final assignment of error, he argues that the cumulative impact of the errors in his trial amounted to a denial of due process. We disagree. Because none of the alleged errors prejudiced Johnson, we cannot

conclude that he was prejudiced by their cumulative effect.  Johnson's sixth assignment of error is overruled.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's convictions having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY