[Cite as *State v. Solomon*, 2021-Ohio-940.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109535 |
| v. | : | |
| DEMITRUS SOLOMON, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 25, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-631697-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ronni Ducoff and Chadwick Cleveland, Assistant Prosecuting Attorneys, *for appellee.*

Allison S. Breneman, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant Demitrus Solomon brings this appeal challenging his convictions and the trial court's sentence for rape and gross sexual imposition. Appellant argues that his convictions were not supported by sufficient evidence and are against the manifest weight of the evidence, the trial court erred in denying

defense counsel's motion for a mistrial, and that the trial court abused its discretion in imposing a sentence that is contrary to law. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} The instant matter arose from several sexual-related incidents that occurred between the victim, D.S. (hereinafter "victim"), and appellant. The victim is appellant's daughter.

{¶ 3} The incidents occurred between November 2017 and May 2018. During the first incident, appellant asked the victim to help her apply lotion to her feet. Appellant grabbed the victim's foot and put one of her toes into his mouth. This incident occurred in the dining room of a house on Scovill Avenue in Cleveland, Ohio.

{¶ 4} According to the victim, subsequent incidents occurred when she and her younger brother, D.S.J., were visiting appellant at a motel. During these subsequent incidents, the victim alleged that appellant (1) touched and sucked the victim's breast, (2) forced his penis into the victim's mouth, (3) forced his penis into the victim's vagina, and (4) forced his penis into the victim's anus. These incidents will be addressed in further detail below.

{¶ 5} Appellant's girlfriend at the time of the toe incident, Marshay Shackelford ("Marshay"), walked into the dining room of her home and saw the victim's toe in appellant's mouth. Marshay eventually discussed her observation with the victim's mother, Latisha Griffith ("Latisha"), and Latisha's boyfriend,

Antonio Poole. Latisha spoke with the victim and asked if anything was going on with appellant. The victim initially denied that anything had occurred with appellant, but later opened up to her mother and confirmed that appellant touched her and had sex with her.

{¶ 6} Latisha took the victim to University Hospitals, Rainbow Babies and Children's Hospital, on May 27, 2018. Latisha and the victim also spoke with Detective Richard Jackson, with the Cleveland Police Department's Sex Crimes Unit, and Cierra Lewis, a social worker with Cuyahoga County's Department of Children and Family Services' Sexual Abuse Unit.

{¶ 7} On September 25, 2018, appellant was charged in a six-count indictment with (1) rape, in violation of R.C. 2907.02(A)(1)(b) (anal penetration); (2) rape, in violation of R.C. 2907.02(A)(1)(b) (vaginal penetration); (3) rape, in violation of R.C. 2907.02(A)(1)(b) (fellatio); (4) kidnapping, in violation of R.C. 2905.01(A)(4), with a furthermore clause alleging that the victim was under the age of 18 and a sexual motivation specification; (5) gross sexual imposition, in violation of R.C. 2907.05(A)(4) (sucking breasts); and (6) gross sexual imposition, in violation of R.C. 2907.05(A)(4) (sucking toes).

{¶ 8} Counts 1, 2, and 3 contained a furthermore clause alleging that appellant purposely compelled the victim who was less than 13 years old to submit by force or threat of force. Counts 1, 2, 3, and 4 contained notice of prior conviction and repeat violent offender specifications. Counts 1-5 were committed between January 1, 2018, and May 11, 2018. Count 6 was committed on or about November 1,

2017, to November 30, 2017. Appellant pled not guilty to the indictment during his March 5, 2019 arraignment.

{¶ 9} A jury trial commenced on February 4, 2020. The following witnesses testified on behalf of the state at trial: (1) Latisha, (2) the victim, (3) the victim's younger brother D.S.J., (4) Doctor Regina Yaskey, (5) Marshay (6) social worker Cierra Lewis (7) appellant's grandmother Beverly Holder, (8) Antonio Poole, and (9) Detective Richard Jackson. The testimony of the state's witnesses will be set forth in further detail below in the analysis of appellant's assignments of error.

{¶ 10} At the close of the state's case in chief, defense counsel moved for a Crim.R. 29 judgment of acquittal on all charges. Specifically, regarding the gross sexual imposition offense charged in Count 6, defense counsel argued that "toes" are not included in the list of erogenous zones under R.C. 2907.01(B), defining sexual contact. Defense counsel further argued that the state did not present any evidence that the purported sucking of the toes was done for sexual gratification.

{¶ 11} The state opposed defense counsel's Crim.R. 29 motion, arguing that the list of erogenous zones set forth in R.C. 2907.01(B) is nonexhaustive, and that it was up to the jury to determine whether the victim's toes constituted an erogenous zone that appellant touched for the purpose of sexual arousal or gratification. The trial court denied defense counsel's Crim.R. 29 motion.

{¶ 12} The defense did not call any witnesses at trial. After the parties discussed the jury instructions, defense counsel renewed the Crim.R. 29 motion. The trial court denied the renewed motion.

**{¶ 13}** Trial concluded on February 10, 2020. On February 14, 2020, the jury returned its verdict. The jury found appellant guilty of rape on Counts 2 and 3, but not guilty on the furthermore clauses alleging that appellant compelled the victim to submit by force or threat of force. The jury found appellant guilty of gross sexual imposition on Count 6. The jury found appellant not guilty of rape on Count 1, kidnapping on Count 4, and gross sexual imposition on Count 5.

**{¶ 14}** The trial court proceeded immediately to sentencing. The trial court sentenced appellant to a prison term of 23 years to life: indefinite prison terms with a minimum term of ten years and a maximum term of life imprisonment on Counts 2 and 3, and three years on Count 6. The trial court ordered the counts to run consecutively to one another. The trial court ordered appellant to pay a fine in the amount of $750. The trial court classified appellant as a Tier III sex offender/child victim offender on Counts 2 and 3, and a Tier II sex offender/child victim offender on Count 6. The trial court reviewed appellant's reporting requirements.

**{¶ 15}** On February 21, 2020, appellant filed the instant appeal challenging the trial court's judgment.

**{¶ 16}** The trial court's February 20, 2020 sentencing entry did not specify the minimum prison term for the indefinite sentences imposed on Counts 2 and 3. The trial court issued a nunc pro tunc sentencing entry on April 3, 2020, correcting this clerical error. In the nunc pro tunc sentencing entry, the trial court clarified that appellant was sentenced to a prison term of "23 years minimum to life": a sentence of life with a minimum of ten years on Count 2; a sentence of life with a minimum

of ten years on Count 3; and three years on Count 6. The trial court ordered appellant to serve the counts consecutively.

{¶ 17} In this appeal, appellant assigns four errors for review:

I. The jury found, against the manifest weight of the evidence, that the appellant committed the acts charged in the indictment.

II. The evidence was not legally sufficient to sustain a guilty verdict.

III. The court failed to declare a mistrial after a witness attacked the defendant in front of the jury.

IV. The trial court abused [its] discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines and erred by imposing consecutive sentences.

{¶ 18} For ease of discussion, we will address appellant's assignments of error out of order.

## II. Law and Analysis

## A. Sufficiency

{¶ 19} In his second assignment of error, appellant argues that his convictions were not supported by sufficient evidence.

{¶ 20} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of the evidence require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt

beyond a reasonable doubt." *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 21} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 22} In the instant matter, appellant references the arguments raised in his first assignment of error challenging the manifest weight of the evidence. "Sufficiency" and "manifest weight" challenges present two distinct legal concepts. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 23. *See Cleveland v. Hall*, 8th Dist. Cuyahoga No. 101820, 2015-Ohio-2698, ¶ 14, citing App.R. 16(A)(7) (overruling appellant's assignment of error relating to a sufficiency challenge pursuant to App.R. 16(A)(7) because the appellant did not make a specific argument regarding why the convictions were not supported by sufficient evidence, and only addressed the issues relating to the manifest weight challenge).

{¶ 23} In support of his sufficiency challenge, appellant argues that "[t]he only evidence that the [s]tate provides to show that [he] raped [the victim] was the testimony of the [victim] and an observation by his ex-girlfriend [Marshay] of an innocent interaction into whether [the victim] was maintaining her hygiene." Appellant's brief at 11. Appellant contends that the testimony of the victim and

Marshay is not enough to support his convictions "considering the lack of any other evidence." *Id.*

{¶ 24} Appellant's "innocent interaction" argument pertains to the manifest weight of the evidence, not the sufficiency of the evidence. Appellant's argument regarding the lack of any other corroborating evidence is also misplaced. The issue before this court is whether the testimony of the victim and Marshay, if believed, sufficiently established that appellant committed the offenses of rape and gross sexual imposition.

{¶ 25} As noted above, appellant was convicted on Counts 2 and 3 of rape, in violation of R.C. 2907.02(A)(1)(b). Count 2 alleged vaginal penetration, and Count 3 alleged fellatio. R.C. 2907.02(A)(1)(b) provides, "[n]o person shall engage in sexual conduct with another * * * when [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶ 26} R.C. 2907.01(A) defines "sexual conduct" as

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 27} Regarding the victim's age, she testified that she was 14-years-old at the time of trial in February 2020. At the time of the incidents between November 2017 and May 2018, the victim would have been under the age of 13.[1]

{¶ 28} Regarding the rape offense charged in Count 3, the victim testified that she and her younger brother were visiting appellant at the motel. She was sitting on the side of the bed in the motel room watching television. Appellant stood in front of her. She did not recall whether appellant said anything to her. Appellant took his pants and his underwear off. He told the victim to open her mouth. She said she would not. He told her to open her mouth again. She did not comply.

{¶ 29} Appellant took his thumb and used it to push the victim's mouth open. This caused her mouth to open. He held his thumb in this position and put his penis in her mouth. Appellant grabbed the victim's head and pushed her head close to his penis. Appellant did not say anything to her when his penis was in her mouth. Appellant began moving back and forth. She did not recall how the incident ended.

{¶ 30} The victim's brother was in the shower when appellant forced his penis into her mouth. Appellant told her brother to stay in the bathroom. When appellant was done, he told the brother he could come out of the bathroom. The victim explained that this was not the first "unusual" thing that appellant did to her at the motel.

---

[1] The victim identified her date of birth at trial, and the record reflects that the state sufficiently established the victim's age at the time of the offenses. (Tr. 458.) Appellant does not dispute this aspect of his convictions.

{¶ 31} Regarding the rape offense charged in Count 2, the victim testified that her brother was in the bathroom of the motel room, and appellant instructed him to stay in the bathroom "[un]til I tell you to come out." (Tr. 496.) She turned the shower water on for her brother and went back and laid in the bed to watch television. Appellant walked over and was standing next to the bed. Appellant took off the victim's pants and underwear. Appellant took his clothes off completely and got into the bed and laid beside the victim.

{¶ 32} The victim was laying on her back. Appellant got on top of her. She did not feel like she could get away from him. Appellant's hands were on both sides of her near her waist. Appellant "pulled open" the victim's legs. She tried to hold her legs together but she was unable to stop appellant from spreading them. After her legs were pulled apart, appellant "put [his penis] inside [the victim's] vagina." (Tr. 504.)

{¶ 33} The victim testified that appellant's penis felt hard when it was inside her and it hurt her. Appellant's body was moving back and forth when his penis was inside her. Appellant was not saying anything to her. Appellant eventually got off of her and she put her clothes back on. The victim recalled feeling or seeing a white and gooey substance on her stomach when appellant was done.

{¶ 34} The next day, appellant drove the victim and her brother to Latisha's house. The victim did not tell anybody what happened at the motel.

{¶ 35} After reviewing the record, we find that the testimony of the victim, if believed, satisfied all the elements of rape in violation of R.C. 2907.02(A)(1)(b), and

sufficiently established that appellant committed the offenses of rape on Counts 2 and 3. Accordingly, appellant's rape convictions were supported by sufficient evidence.

{¶ 36} As noted above, appellant does not specifically address his gross sexual imposition conviction in challenging the sufficiency of the evidence. "The appellant bears the burden of demonstrating error on appeal by reference to the record of the proceedings below." *Davis v. Wesolowski*, 2020-Ohio-677, 146 N.E.3d 633, ¶ 29 (8th Dist.), citing *Stancik v. Hersch*, 8th Dist. Cuyahoga No. 97501, 2012-Ohio-1955, *see* App.R. 16(A)(7). Although it is not this court's duty to construct an argument on appellant's behalf, we find that appellant's conviction on Count 6 for gross sexual imposition was supported by sufficient evidence.

{¶ 37} Appellant was also convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(4), which provides, "[n]o person shall have sexual contact with another * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including *without limitation* the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." (Emphasis added.) Count 6 alleged that appellant sucked on the victim's toes.

{¶ 38} The victim testified that she went into the dining room of Marshay's house to put lotion on her feet because they were dry. Appellant was also in the dining room. He was sitting at the table facing the victim. Marshay was in the

basement and the other children were upstairs. She had put lotion on in the dining room before. Appellant asked the victim to help her put the lotion on. She agreed. Appellant rubbed lotion into his hands and put the lotion on the victim's feet. When he was done applying lotion to the victim's feet, he put one of the victim's toes in his mouth. He did not say anything when this occurred.

{¶ 39} Marshay came into the dining room and saw the victim's toe in appellant's mouth. Appellant took her foot out of his mouth. The victim did not say anything to Marshay. The victim went upstairs and got ready for school. She heard Marshay and appellant talking before they left for school. Marshay was upset. She did not tell anybody at school what happened with appellant. The victim was supposed to go back to Marshay's house after school. Marshay called her cell phone and changed plans. The victim and her brother went back to Latisha's house after school, not Marshay's house. They never returned to Marshay's house after this incident.

{¶ 40} Marshay testified that she was in an off and on relationship with appellant between 2013 and 2017. Their relationship ended in 2017. They broke up because she saw "inappropriate behavior between [appellant] and [the victim]." (Tr. 686.)

{¶ 41} Before encountering appellant and the victim in the dining room, Marshay was in the basement. She crept upstairs because she "felt like something was goin[g] on." (Tr. 689.) She crept around the corner and saw the following:

[Appellant] and [the victim] was both sitting in the chair. Her foot and — her leg, he had her foot, and her toes was in his mouth. I seen it and kind of stepped back, and I had to kinda catch my breath and gather myself, and then I kinda — I walked back out.

And so when I walked back out, I kind of directed my questions toward [the victim]. I asked her, you know, what is going on, baby? Are you okay? What's going on? She was just kinda like, you know, ain't nothing going on. Come on, let's go.

When she said that, the situation kinda got a little hostile. [Appellant] was like — he started calling me names and saying what was I saying? I said, what was going on? Her foot was in your mouth. He said, I was checking her toes and making sure something. This is my daughter. What are you sayin'?

(Tr. 687-688.)

{¶ 42} When she saw the victim's toe in appellant's mouth, Marshay pulled back and caught her breath because she "wanted to proceed with caution." Marshay explained, "I didn't want — I did not want to make the wrong decision. I did not want to — I was just kinda thrown off from the whole situation, and I didn't expect to see what I seen when I hit the corner. And I just didn't know how to react. So I wanted to make sure that I did not do the wrong thing." (Tr. 690.)

{¶ 43} Appellant did not return to her house after this incident. Their relationship ended.

{¶ 44} Marshay tried to tell Latisha and Poole about what she witnessed in the dining room. Marshay went to Latisha's house and attempted to speak with Latisha about "what I had witnessed and what I thought was goin[g] on between [appellant] and [the victim]." (Tr. 694.) After she went to Latisha's house, Marshay

spoke with Latisha on the phone and relayed her concerns to Latisha about what she had seen.

{¶ 45} Appellant claimed that he had been checking the victim's toes. Marshay confirmed, however, that she did not consider what she observed in the dining room as having anything to do with appellant checking or giving hygiene instructions to the victim.

{¶ 46} The testimony of the victim and Marshay, if believed, sufficiently established that appellant committed the offense of gross sexual imposition on Count 6.

{¶ 47} Although R.C. 2907.01(B) does not specifically identify feet or toes as erogenous zones, the list set forth therein is non-exhaustive.

> Since R.C. 2907.01(B) contains the phrase, "including without limitation," it is reasonable to conclude "that the legislature intended that body parts that are not traditionally viewed as erogenous zones, may, in some instances, be considered erogenous zones." *State v. Miesse*, 2d Dist. Clark No. 99-CA-74, 2000 Ohio App. LEXIS 3719 (Aug. 18, 2000).
>
> Indeed, Ohio courts have typically found that the list of erogenous zones in R.C. 2907.01 is a non-exhaustive list. *See State v. Stair*, 12th Dist. Warren No. CA2001-03-017, 2002 Ohio [App. LEXIS 87 (Jan. 14, 2002)] (finding that victim's hips constituted an erogenous zone); *Miesse, supra* (holding that the defendant's kissing, touching, and blowing of the victim's stomach was sexual contact); *State v. Young*, 4th Dist. Athens No. 96CA1780, 1997 Ohio App. LEXIS 3882 (Aug. 15, 1997) (holding that touching a victim's buttock through her clothing constituted sexual contact); *State v. Watkins*, 10th Dist. Franklin No. 92AP-1546, 1993 Ohio App. LEXIS 2412 (May 4, 1993) (finding that the rubbing of the back of the victim's leg was sexual contact).

*State v. Peddicord*, 3d Dist. Henry No. 7-12-24, 2013-Ohio-3398, ¶ 15-16. "Sexual contact, an element of gross sexual imposition, means *any nonconsensual physical*

*touching*, even through clothing, of the body of another." (Emphasis added.) *State v. Jones*, 8th Dist. Cuyahoga No. 87411, 2006-Ohio-5249, ¶ 15, citing *State v. Ackley*, 120 Ohio Misc.2d 60, 2002-Ohio-6002, 778 N.E.2d 676.

{¶ 48} The state was not required to present direct evidence proving the element of sexual arousal or gratification. *State v. Kalka*, 8th Dist. Cuyahoga No. 106339, 2018-Ohio-5030, ¶ 31. Rather, the jury "may infer that a defendant was motivated by a desire for sexual arousal or gratification from the totality of the circumstances." *State v. Edwards*, 8th Dist. Cuyahoga No. 81351, 2003-Ohio-998, ¶ 22, citing *State v. Oddi*, 5th Dist. Delaware No. 02CAA01005, 2002-Ohio-5926.

> [O]ne with a fetish for navels or feet could be in violation of [R.C. 2907.05(A)] for touching the navel or feet of another, not his or her spouse, for the purpose of sexual arousal or gratification. Although the body parts, namely navel or feet, are not specifically listed in the "sexual contact" definition [under R.C. 2907.01(B)], if the state is able to prove beyond a reasonable doubt that, in the mind of the offender, or in the mind of the victim, or in the mind of a reasonable person, those body parts are sensitive to sexual stimulation, or are apt to cause sexual arousal or gratification in either the offender or the victim, and if it was the purpose of the offender in the touching to obtain sexual arousal or gratification for himself or the victim, then the state has carried its burden of proof.

*Ackley* at ¶ 15.

> Whether the touching or contact was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact. [*State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-2664, ¶ 13], citing [*In re Anderson*, 116 Ohio.App.3d 441, 443, 688 N.E.2d 545 (12th Dist.1996)], and *State v. Mundy*, 99 Ohio App.3d 275, 289, 650 N.E.2d 502 [(2d Dist.1994)]. In determining the defendant's purpose, the trier of fact may infer what the defendant's motivation was in making physical contact with the victim. *Meredith*, citing *Mundy* and [*State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991)]. "If

the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *Cobb* [at 185].

*In re A.L.*, 12th Dist. Butler No. CA2005-12-520, 2006-Ohio-4329, ¶ 20.

{¶ 49} In the instant matter, the jury could have reasonably inferred, from the type, nature, and circumstances of the contact between appellant's mouth and the victim's toe, that the contact was performed for the purpose of sexual arousal or gratification. Appellant put the victim's toe in his mouth when they were alone in the dining room. No one else was around. Marshay was in the basement, and the other children were upstairs. Appellant offered to apply the lotion for the victim, and she agreed. Appellant exceeded the scope of the victim's consent by putting her toe into his mouth. The victim confirmed that appellant did not merely "kiss" her toe, he actually inserted her toe into his mouth. Finally, the victim testified that appellant took her toe out of his mouth when Marshay came into the dining room and saw what was happening.

{¶ 50} Marshay, with whom appellant had been romantically involved between 2013 and 2017, was thrown off when she saw the victim's toe in appellant's mouth. So much so that she had to catch her breath and collect herself. Marshay's observation led her to believe that something "was goin' on between [appellant] and [the victim]." (Tr. 694.) Marshay was so concerned by her observation and belief that she made arrangements for the victim and her brother to go to Latisha's house after school, rather than returning to Marshay's house, and Marshay relayed her

concerns that something "was goin' on between [appellant] and [the victim]" to Latisha and Poole.

{¶ 51} Furthermore, the jury could have reasonably inferred that appellant performed the contact for the purpose of sexual arousal or gratification from his escalation from sexual contact to sexual conduct. The victim testified that appellant put her toe in his mouth while he was living with Marshay. The victim never returned to Marshay's house after this initial incident, but she continued to see appellant at the motel. Subsequent incidents occurred at the motel during which appellant escalated from sexual contact to sexual conduct, forcing his penis into the victim's mouth and vagina.

{¶ 52} Viewing the testimony of the victim and Marshay in a light most favorable to the state, we find that a rational trier of fact could have reasonably inferred that appellant put the victim's toe in his mouth for the purpose of sexual arousal or gratification. Based on the foregoing analysis, appellant's gross sexual imposition conviction was supported by sufficient evidence.

{¶ 53} For all of the foregoing reasons, appellant's second assignment of error is overruled. Appellant's rape and gross sexual imposition convictions were supported by sufficient evidence.

## B. Manifest Weight

{¶ 54} In his first assignment of error, appellant argues that his convictions are against the manifest weight of the evidence.

{¶ 55} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 56} In support of his manifest weight challenge, appellant appears to argue that his convictions were against the manifest weight of the evidence because they were based on the victim's testimony alone without any corroboration or supporting physical evidence. Appellant appears to challenge the credibility of "the only witness" Marshay and her testimony on the basis that she "was already on the outs with [appellant.]" Appellant's brief at 10.

{¶ 57} Regarding appellant's argument that Marshay was not credible, Marshay testified that her relationship with appellant was "[o]n and off since 2013." The relationship ended in 2017. Marshay testified that the relationship ended

because she saw "inappropriate behavior between [appellant] and [the victim]." (Tr. 686.)

{¶ 58} Marshay acknowledged that her and appellant were already on the rocks before she witnessed the incident in the dining room. She had already been living downstairs in the basement for approximately one month. They did not have plans to officially split up, however. Nor were they trying to reconcile with one another. They were just "seein[g] what was goin[g] on" and she was giving appellant some space. (Tr. 705.)

{¶ 59} Accordingly, the jury had sufficient information about the relationship between Marshay and appellant to assess the credibility of Marshay. The jury also had sufficient information to assess the credibility of all the witnesses. *See State v. Davis*, 8th Dist. Cuyahoga No. 107925, 2019-Ohio-4672, ¶ 66; *State v. Sumlin*, 8th Dist. Cuyahoga No. 108000, 2020-Ohio-1600, ¶ 58.

{¶ 60} Appellant appears to argue that the victim's testimony was not credible because "[m]any additional facts came out during trial that the victim failed to provide in her initial statement." Appellant's brief at 10. Defense counsel emphasized and thoroughly explored these discrepancies between the victim's initial statement to Detective Jackson and her trial testimony on cross-examination. In fact, a 29-minute video of the victim's initial interview was played for the jury at trial.

{¶ 61} After reviewing the record, we acknowledge that there were, in fact, some minor inconsistencies between the victim's initial statement to police and trial

testimony. For instance, the victim asserted in her initial statement that she showered at the motel before her brother; the victim testified at trial, however, that her brother would take the first shower at the motel. The victim testified that her brother was in the shower every time that appellant assaulted her in the motel room; in her initial statement, however, the victim stated that her brother was either in the shower or asleep when she was assaulted. The victim testified that appellant had taken his pants off when he forced his penis into her mouth; in her initial statement, however, the victim stated that appellant's clothes were on when he put his penis in her mouth. During the initial interview, the victim stated that the incidents began in January 2018; she could not, however, remember the date of the first or the last incident. The victim testified at trial that she had an idea of when the incidents happened, the months in which they happened, and how old she was and what grade she was in at the time. Although she did not know the dates on which the incidents occurred, the victim was able to determine when the incidents occurred in relation to holidays, including Christmas, Easter, and Martin Luther King, Jr., Day.

{¶ 62} Although there were minor inconsistencies between the victim's initial statement to police and her trial testimony, the victim's account of the incidents were largely consistent in all material respects.

> [A] defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness' testimony are inconsistent or contradictory. *See, e.g.,* [*State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.)]; *see also State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38 ("'A conviction is not against the manifest weight of the evidence solely because the [factfinder] heard inconsistent testimony.'"), quoting *State v. Asberry*, 10th Dist.

Franklin No. 04AP-1113, 2005-Ohio-4547, ¶ 11; *State v. Mann*, 10th Dist. Franklin No. 10AP-1131, 2011-Ohio-5286, ¶ 37 ("'While [a factfinder] may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.'"), quoting *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, 7 (May 28, 1996).

*State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 40.

{¶ 63} In the instant matter, although there were some minor inconsistencies between the victim's initial statements to police and trial testimony, the record reflects that the victim's statements and testimony were consistent in many material respects. The victim's testimony is credible and consistent that appellant committed the rape offenses charged in Counts 2 and 3, and the gross sexual imposition offense charged in Count 6.

{¶ 64} Additionally, we find that the aforementioned inconsistencies regarding the order in which the children showered at the motel, whether the brother was in the bathroom or asleep when appellant assaulted the victim, and whether appellant's pants were off or on when he forced his penis into the victim's mouth should not control the outcome of this case. "Minor inconsistencies in witness testimony will not render a conviction so against the manifest weight of the evidence as to cause a miscarriage of justice." *State v. McNamara*, 8th Dist. Cuyahoga No. 104168, 2016-Ohio-8050, ¶ 38. The weight of the evidence supports appellant's convictions, and the jury did not lose its way and create a manifest miscarriage of justice.

{¶ 65} While we acknowledge the inconsistencies in the testimony of the victim and her statements to police, a thorough review of the record reveals that the victim provided consistent and generally credible testimony as to the critical questions in this case — appellant's sexual contact and Marshay's house, and appellant's sexual conduct at the motel. *See State v. Johnson*, 8th Dist. Cuyahoga No. 107929, 2019-Ohio-5335, ¶ 12. The victim testified in detail about appellant's sexual abuse. The abuse the victim suffered at the hands of appellant was undoubtedly traumatic. It is not reasonable to expect the victim to remember every single detail about appellant's actions and the circumstances under which they occurred, particularly because there were multiple incidents that occurred over a period of time. The record reflects that the victim testified consistently about the important aspects of appellant's conduct.

{¶ 66} Finally, appellant contends that the investigation into the victim's allegations was "flawed and inadequate[.]" Appellant's brief at 10. Defense counsel thoroughly explored and confronted Detective Jackson with the purported deficiencies in his investigation on cross-examination.

{¶ 67} Detective Jackson testified about the investigation he conducted after the matter was reported on May 27, 2018. Detective Jackson testified that he interviewed the victim and her brother. He stated that he also spoke with or reached out to Latisha, appellant's grandmother, appellant's mother, and Marshay. Detective Jackson reviewed the victim's medical records from University Hospitals.

**{¶ 68}** Detective Jackson also reviewed the text messages between Latisha and appellant that Latisha provided to him. In the text messages, Latisha told appellant she was going to take the victim to the hospital. Appellant replied, "[when] they tell [you the victim is] cool, don't call my phone" and "[d]on't try to put me [i]n jail[.]" Appellant also replied, "[l]isten[,] just keep them away I'm moving out of town[.]" Latisha responded to appellant, "[y]ou sick [as f**k]." Appellant replied, "[m]an all I ever did was make [the victim] smell herself cause she come out smelling like boo boo[.]" Latisha testified about these text messages at trial. The final text message sent by appellant pertained to the incident that occurred in the dining room of Marshay's house. (Tr. 425.)

**{¶ 69}** Detective Jackson acknowledged that he did not conduct a phone dump[2] of Latisha's cell phone. He did not look at text messages on Latisha's phone from the day before or the day after she texted appellant; he explained there was no need to do a phone dump of Latisha's phone because of the text messages on her phone from appellant

**{¶ 70}** Detective Jackson went to the motel where the incidents involving appellant took place. He attempted to get photographs of the motel rooms involved. The motel's staff was unable to identify the exact rooms appellant and the children occupied because the victim could not recall the exact dates on which the incidents took place. Detective Jackson did not take pictures of the various rooms and room

---

[2] A phone dump is a process of retrieving data and information, such as call logs, from a phone. *See State v. Mathis*, 8th Dist. Cuyahoga No. 107986, 2019-Ohio-4887, ¶ 27; *State v. Clark*, 2018-Ohio-521, 106 N.E.3d 256, ¶ 28 (6th Dist.).

configurations from the motel to show to the victim. He explained that these photographs would not accurately show the crime scene because the configurations of each room could be entirely different.

{¶ 71} He did not come across anything during the course of his investigation that suggested there was any bad blood between the parties that testified in this case, which included the victim, Latisha, and Marshay, that led him to believe that it was necessary to look at additional text messages or conduct a phone dump. (Tr. 782.) Detective Jackson confirmed again that none of the parties showed any bad blood towards each other. Finally, Detective Jackson testified that he did not come across anything during the course of his investigation that led him to suspect that anyone was trying to do harm to appellant by bringing false allegations against him.

{¶ 72} Accordingly, the jury had sufficient information about Detective Jackson's investigation to assess his credibility and the credibility of his testimony.

{¶ 73} The state's theory of the case at trial was that appellant put the victim's toe in his mouth for the purpose of sexual arousal or gratification, and that appellant raped the victim in the motel. On the other hand, the defense's theory of the case was that the incident involving the victim's foot was an innocent interaction between appellant and the victim, during which appellant was inquiring about the victim's hygiene and smelling her foot. The defense's theory was that Marshay made up a false claim because her and appellant were "already on the outs[.]" Appellant's brief at 10. Regarding the sexual conduct at the motel, the defense's theory was that the

sexual conduct did not occur because if it had, the victim's younger brother would have noticed.

{¶ 74} "'[A] conviction is not against the manifest weight of the evidence simply because the [finder of fact] rejected the defendant's version of the facts and believed the testimony presented by the [prosecution].'" *State v. Jallah*, 8th Dist. Cuyahoga No. 101773, 2015-Ohio-1950, ¶ 71, quoting *State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 2. The jury, as the finder of fact, did not lose its way in resolving the conflicting theories based on the evidence presented at trial.

{¶ 75} After reviewing the record, we find appellant's convictions are not against the manifest weight of the evidence. We do not find in resolving conflicts in the evidence that the jury, as the trier of fact, clearly lost its way in finding appellant guilty of rape and gross sexual imposition. Furthermore, this is not the exceptional case in which the evidence weighs heavily against appellant's convictions.

{¶ 76} For all of the foregoing reasons, appellant's first assignment of error is overruled. Appellant's convictions are not against the manifest weight of the evidence.

### C. Motion for Mistrial

{¶ 77} In his third assignment of error, appellant argues that the trial court erred in failing to declare a mistrial after appellant was "attacked" by a witness in front of the jury. Appellant's argument pertains to the testimony of Poole.

{¶ 78} Poole lives with his two children, his girlfriend Latisha, and her two children. Appellant is the father of Latisha's children. As he testified, Poole stared at appellant and directed offensive language towards him. (Tr. 738.)

{¶ 79} Following his testimony, and as he stepped down from the witness stand, Poole attempted to physically attack appellant at the defense table and in front of the jury. As he was escorted out of the courtroom, Poole shouted additional obscenities. (Tr. 751.)

{¶ 80} The trial court ordered the jury to exit the courtroom. After Poole and the jury were out of the courtroom, defense counsel moved for a mistrial, arguing:

> Your Honor, based upon the outburst in the court not caused by the Judge, not caused by the prosecutor, not caused by the Defendant, or Defense counsel, we still had an outburst where the witness attempted to attack the Defendant in front of the jury, and it took about five deputies to restrain the gentleman, and there was a fight.
>
> I'm going to move for a mistrial because it has a highly inflammatory and prejudicial effect upon their ability to consider this case on the merits, so I will move for a mistrial.

(Tr. 751-752.)

{¶ 81} The state argued that because the trial court and the state were not responsible for the outburst, a mistrial was not necessary and a curative instruction would "suffice to serve as a counterbalance to what happened in court." (Tr. 752.)

{¶ 82} In support of the motion for a mistrial, defense counsel argued, "we're entitled to a fresh jury, and not have the taint of that violence against the Defendant in front of the jury." (Tr. 752.)

{¶ 83} The trial court denied defense counsel's motion for a mistrial:

The Court makes the following finding with reference to your motion. The Court finds that the actions that occurred not as a result of any action by any of the agents of the State of Ohio, nor by any of the members of the Bar Association, for which we are all officers.

The Court doesn't feel any of those individuals engaged in any conduct that caused this to arise. That this was an honest spur reaction that was generated by a Defendant's witness, and that none of the officers of the Court had anything to do with it.

It was the — Fortunately, the Cuyahoga County Sheriff's Department was here to suppress the attack and it was suppressed.

The unfortunate thing is that it did occur in front of the jury. However, they also had the opportunity to hear his testimony, and to witness his anger, and his state of mind. I believe a curative instruction will satisfy a fair and just trial.

And, therefore, the motion will be denied.

(Tr. 752-753.)

{¶ 84} In this appeal, appellant argues that the incident that occurred in front of the jury was "highly traumatic." He further speculates that it is "highly probable that many of the jurors never have experienced an act of violence in person and were negatively affected. Upon experiencing this traumatic event, it would be highly unlikely that the average juror would be capable of continuing in their duty to provide a fair trial to Mr. Solomon." Appellant's brief at 13.

{¶ 85} The trial court should declare a mistrial "only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). A trial court enjoys broad discretion in ruling on a motion for a mistrial. *State v. Iacona*, 93 Ohio St.3d 83, 100, 752 N.E.2d 937

(2001). This court will not reverse a trial court's ruling on a motion for a mistrial absent an abuse of that discretion. *State v. Benson*, 8th Dist. Cuyahoga No. 87655, 2007-Ohio-830, ¶ 136.

**{¶ 86}** In support of his argument that the trial court erred by not declaring a mistrial following Poole's outburst, appellant directs this court to *State v. Scott*, 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, *State v. White*, 85 Ohio St.3d 433, 440, 709 N.E.2d 140 (1999), and *State v. Morales*, 32 Ohio St.3d 252, 513 N.E.2d 267 (1987).

**{¶ 87}** In *Scott*, involving a capital murder trial, defense counsel moved for a mistrial on the basis that the victim's family members crying during trial "enhanced jury sympathy for [the victim] and his family, thereby depriving [the defendant] of a fair trial." *Id.* at ¶ 43. On one of the occasions in which defense counsel moved for a mistrial, defense counsel asserted that a victim's mother and some of the jurors had been crying during the testimony of a state's witness. *Id.* at ¶ 46.

**{¶ 88}** The Ohio Supreme Court set forth the following test regarding emotional outbursts during trial:

> a trial court must determine, as a question of fact, whether an emotional outburst [during trial] deprived the defendant of a fair trial by improperly influencing the jury. *State v. Benge*[, 75 Ohio St.3d 136, 144, 661 N.E.2d 1019 (1996)]; [*Morales* at 255]; *State v. Bradley*[, 3 Ohio St.2d 38, 209 N.E.2d 215 (1965)], syllabus. "In the absence of clear, affirmative evidence to the contrary, the trial court's determination will not be disturbed." *Morales* [at 255].

*Scott* at ¶ 44. "Only the trial judge can authoritatively determine whether the jury was disturbed, alarmed, shocked, or moved by the demonstration." *Morales* at 255

{¶ 89} After reviewing the record, we find no basis upon which to conclude that the trial court's ruling denying defense counsel's motion was unreasonable, arbitrary, or unconscionable. In this case, unlike *Scott*, Poole's violent outburst and attempt to attack appellant is unlikely to elicit any sympathy for the victim or Poole, much less the same sympathy elicited by a victim's mother and family members crying. In fact, the argument can be made that the incident benefitted appellant rather than prejudiced him.

{¶ 90} Poole's outburst and attempt to attack appellant was more likely to have a negative impact on the jury's perception of Poole and his testimony than on the jury's perception of appellant. Poole's outburst may have even elicited sympathy for appellant, as Poole was the perpetrator of the attempted attack, and appellant was the victim.

{¶ 91} Furthermore, there is no indication that the jury was improperly influenced by Poole's outburst, or that the jury's verdict was the product of passion or prejudice that resulted therefrom. As noted above, the jury did not find appellant guilty on all counts and specifications charged in the indictment. It is evident that the jury was capable of following the trial court's instructions and considering the evidence as it pertained to each individual count.

{¶ 92} Unlike *Scott*, 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, where a victim's mother and members of the jury were purportedly crying during the testimony of a state's witness, there is no evidence in this case that the incident had any effect on the jury, or any evidence indicating that any of the jurors displayed

any emotions during or after Poole's outburst. Although appellant speculates that the incident negatively impacted the jurors, he fails to identify anything in the record in support of his claim (i.e. jurors that were crying, jurors that were reluctant to continue serving on the jury after the outburst, jurors that asked to be removed from the jury after the incident out of fear, jurors that had health- or medical-related issues as a result of the incident). *See State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 126 (holding that the trial court did not abuse its discretion in denying defense counsel's motion for a mistrial because "[n]othing in the record shows that the outburst had any effect on the jury" and "the trial court's admonitions focused the jury on the evidence and away from the outburst.").

{¶ 93} Finally, in *Scott*, the trial court "cautioned jurors to focus on the evidence and to disregard extrinsic matters in their decision making." *Id.* at ¶ 48. Similarly, in this case, the trial court provided the following curative instruction to the jury following the incident:

> Ladies and gentlemen of the jury, the Court would, first of all, like to issue an apology to you both professionally and personally for the display that occurred in the courtroom.
>
> That isn't the way we like to conduct ourselves. We consider ourselves as holding a formal proceeding where dignity and respect is shown throughout the course of the proceedings.
>
> However, sometimes emotional things occur. They occur in people's personal lives as well as their professional lives. We ask that you understand that, and certainly ask *that you do not take that into consideration for your finding of what the facts of this case to be.*
>
> We ask, ladies and gentlemen of the jury, that *you base your findings solely on the facts as you find them to be in this case, and the law that will be applied to you by the Judge.*

I would also like to indicate for the record, the statute does require every time that you leave the courtroom that I give you what's called an admonition. And because of the emergency situation that I did not want you to be here in the event of something further occurring, I just asked you to leave. So I want to apologize for that as well.

While it is unusual, like I said, it doesn't happen like that all the time. And *it certainly cannot have any impact on what you find the facts of this case to be.*

Now, because our schedule has been interrupted, we are going to recess for the evening.

(Emphasis added.) (Tr. 754-755.)

{¶ 94} This court has explained that "[c]urative instructions have been recognized as an effective means of remedying errors or irregularities that occur during trial." *State v. Williams*, 8th Dist. Cuyahoga No. 94242, 2010-Ohio-5484, ¶ 21, citing *State v. Ghaster*, 8th Dist. Cuyahoga No. 91576, 2009-Ohio-2134, citing *State v. Zuern*, 32 Ohio St.3d 56, 61, 512 N.E.2d 585 (1987). Furthermore, a jury is presumed to follow instructions provided by the trial court, including curative instructions. *Id.*, citing *State v. Henderson*, 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988).

{¶ 95} For all of the foregoing reasons, we find that appellant has failed to provide clear and affirmative evidence demonstrating that Poole's outburst improperly influenced the jury, materially affected the merits of the case, or deprived appellant of a fair trial. *See State v. Williams*, 8th Dist. Cuyahoga No. 106266, 2018-Ohio-3368, ¶ 41. Therefore, we find no basis upon which to conclude that the trial court's judgment denying defense counsel's motion for a mistrial, and

determination that a curative instruction to the jury was more appropriate than granting a mistrial, was arbitrary, unreasonable, or unconscionable.

{¶ 96} Appellant's third assignment of error is overruled.

## D. Consecutive Sentences

{¶ 97} In his fourth assignment of error, appellant argues that the trial court abused its discretion and erred in imposing consecutive sentences.

{¶ 98} As an initial matter, we note that this court does not review felony sentencing for an abuse of discretion. Rather, we review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 16.

{¶ 99} R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

{¶ 100} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 101} Conformity with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). To this end, a reviewing court must be able to ascertain from the record evidence to support the trial court's findings. *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to [recite verbatim] the statutory language, 'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 176, quoting *Bonnell* at ¶ 37.

{¶ 102} In the instant matter, appellant does not further develop his argument that the trial court erred in imposing consecutive sentences and that consecutive sentences were contrary to R.C. 2929.14 and "the felony sentencing

guidelines[.]" For instance, appellant does not argue that the trial court failed to make the requisite findings under R.C. 2929.14(C)(4) or that the record clearly and convincingly does not support the trial court's findings. Nevertheless, after reviewing the record, we find that the trial court did not err in imposing consecutive sentences.

{¶ 103} The record reflects that the trial court made the requisite findings pursuant to R.C. 2929.14(C)(4) in imposing consecutive sentences. In making the first finding under R.C. 2929.14(C)(4), the trial court stated, "[t]he Court finds consecutive sentences are necessary to protect the public from future crime. The Court finds that consecutive sentences are necessary to punish the offender." (Tr. 945-946.) The trial court made a thorough and detailed proportionality finding:

> The Court finds that consecutive sentences are not disproportionate to the seriousness of the offender's conduct.
>
> When the Court makes that finding, the Court does find that Mr. Solomon used his parental relationship with [the victim] to weaponize his penis and use it against her, and he continued to weaponize his penis on a regular basis, and he never, ever, ever relented. He continued to weaponize his penis and use it against [the victim].
>
> The Court further finds that consecutive sentences are not disproportionate to the danger the offender poses to the public.
>
> When I arrived at that conclusion, the Court does take into consideration the relationship that existed between he [the victim]. The harm that was caused, that he reduced her to nothing, and made her think she was unimportant. And that he never, ever, ever showed any kindness to her once he weaponized his penis and used it against her.

(Tr. 946.)

**{¶ 104}** Regarding the third finding, the trial court determined that R.C. 2929.14(C)(4)(c) applied:

> The Court further finds the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
>
> The Court does find that he has a prior history in front of Judge Robert McClelland in Case No. CR 12-567455 where he was convicted of robbery.
>
> The Court further finds that he has a prior in front of Judge Robert McClelland in Case CR 12-563540 where he pled guilty to trafficking in drugs.
>
> Further, in front of Judge Robert McClelland, Case No. CR 12-562666, he entered a plea of guilty to drug possession.
>
> Additionally, in front of Judge Robert McClelland, in Case No. CR 12-561866-B, he entered a plea of guilty to a trafficking offense.
>
> Lastly, in front of Judge Bridget M. McCafferty, in Case No. CR 9-521197 he entered a plea of carrying a concealed weapon.
>
> The Court further finds that his conduct over the course of this trial where he had people contact the witnesses in this case, and his conduct, once the verdict was read, where he openly yelled out in court about he was innocent indicates that he has no remorse for his conduct.
>
> And, therefore, the Court believes that consecutive sentences are necessary and justified.

(Tr. 945-948.)

**{¶ 105}** Accordingly, the record reflects that the trial court made the requisite findings during the sentencing hearing under R.C. 2929.14(C)(4) in imposing consecutive sentences. The trial court incorporated the consecutive sentence findings into its sentencing journal entry, as required by *Bonnell*. The trial court's April 3, 2020 sentencing entry provides, in relevant part,

Consecutive sentence is necessary to protect the public from future crimes and is necessary to punish he offender. Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and are not disproportionate to the danger the offender poses to the public. Offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 106} For all of the foregoing reasons, we find that the trial court made the requisite findings during the sentencing hearing under R.C. 2929.14(C)(4) in imposing consecutive sentences, and incorporated the findings into its sentencing journal entry.

{¶ 107} After reviewing the record, we cannot say that the record clearly and convincingly does not support the trial court's findings under R.C. 2929.14(C)(4). Appellant expressed no remorse whatsoever, either during trial or at sentencing, for his conduct or the devastating impact it had on the victim. Appellant failed to accept any responsibility for his actions. Rather, appellant asserted that he was innocent, that "no evidence or nothing" had been found, and that the jury's verdict was "crazy." (Tr. 937.)

{¶ 108} The victim's mother, Latisha Griffith, addressed the trial court. Griffith described the impact appellant's actions had on the victim's life, and how appellant took something from the victim that she will never get back. Appellant's actions also "tore [their] family apart, our lives, our sanity." (Tr. 939.) The victim will be dealing with the impact of appellant's actions for the rest of her life.

{¶ 109} For all of the foregoing reasons, we find that the record before this court clearly and convincingly supports the trial court's R.C. 2929.14(C)(4) findings.

Because the trial court made the requisite findings during the sentencing hearing under R.C. 2929.14(C)(4), incorporated the findings into its sentencing journal entry, and the findings are clearly and convincingly supported by the record, the trial court did not err in imposing consecutive sentences.

{¶ 110} Finally, appellant also appears to argue that the trial court's imposition of consecutive sentences was contrary to "the felony sentencing guidelines," R.C. 2929.11 and 2929.12. Appellant's brief at 14. Appellant argues that the trial court "abused its discretion in failing to properly weigh the seriousness and recidivism factors set forth in R.C. 2929.12, as well as failing to properly consider the purposes and principles of the felony sentencing guidelines before imposing a 23 year to life sentence." Appellant's brief at 16.

{¶ 111} A sentence is contrary to law if the sentence falls outside the statutory range for the particular degree of offense or the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11, and the seriousness and recidivism factors set forth in R.C. 2929.12. *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13. Unlike R.C. 2929.14(C)(4), governing consecutive sentences, R.C. 2929.11 and 2929.12 are not fact-finding statutes. *State v. Wenmoth*, 8th Dist. Cuyahoga No. 103520, 2016-Ohio-5135, ¶ 16.

{¶ 112} Although the trial court must consider the principles and purposes of sentencing, as well as any mitigating factors, the court is not required to use particular language nor make specific findings on the record regarding its

consideration of those factors. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31; *State v. Jones*, 8th Dist. Cuyahoga No. 99759, 2014-Ohio-29, ¶ 13. In fact, unless the defendant affirmatively shows otherwise, it is presumed that the trial court considered the relevant sentencing factors under R.C. 2929.11 and 2929.12. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 11. This court has held that a trial court's statement in its sentencing journal entry that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12. *State v. Paulino*, 8th Dist. Cuyahoga No. 104198, 2017-Ohio-15, ¶ 37.

{¶ 113} In the instant matter, the trial court's sentence on appellant's gross sexual imposition conviction was within the permissible statutory range under R.C. 2929.14(A)(3)(a) for third-degree felonies. The sentences imposed by the trial court on appellant's rape convictions complied with the statutory provisions set forth in R.C. 2971.03(B)(1)(a), which requires the trial court to impose an indefinite prison term consisting of a minimum term of ten years and a maximum term of life imprisonment. The trial court's sentencing journal entry provides, in relevant part, "[t]he court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11."

{¶ 114} Aside from this statement in its sentencing entry, the record reflects that the trial court did, in fact, consider R.C. 2929.11 and 2929.12 in imposing its sentence. The trial court considered the applicable seriousness and recidivism factors indicating that (1) appellant's conduct was more seriousness than conduct

normally constituting the offenses and (2) appellant is likely to commit future crimes. In imposing appellant's sentence, the trial court emphasized that "[appellant's] conduct over the course of this trial where he had people contact the witnesses in this case, and his conduct, once the verdict was read, where he openly yelled out in court about he was innocent indicates that he has no remorse for his conduct." (Tr. 947-948.) The trial court also emphasized the harm that appellant's conduct caused the victim and how appellant exploited his father-daughter relationship with the victim in committing the offenses.

{¶ 115} Appellant has failed to affirmatively demonstrate that the trial court failed to consider R.C. 2929.11 and 2929.12 in crafting its sentence. Appellant's sentence is not contrary to law merely because he disagrees with the way in which the trial court weighed the R.C. 2929.11 and 2929.12 factors and applied these factors in crafting an appropriate sentence. *See State v. Nelson*, 8th Dist. Cuyahoga No. 106858, 2019-Ohio-530, ¶ 25, citing *State v. Mock*, 8th Dist. Cuyahoga No. 105060, 2017-Ohio-8866, ¶ 21.

{¶ 116} For all of the foregoing reasons, appellant's fourth assignment of error is overruled. The trial court did not err in imposing consecutive sentences, and the trial court's sentence is not contrary to law.

### III. Conclusion

{¶ 117} After thoroughly reviewing the record, we affirm the trial court's judgment. Appellant's rape and gross sexual imposition convictions were supported by sufficient evidence and are not against the manifest weight of the evidence. The

trial court did not abuse its discretion in denying defense counsel's motion for a mistrial. The trial court did not err in imposing consecutive sentences, and the trial court's sentence is not contrary to law.

{¶ 118} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK D. CELEBREZZE, JR., JUDGE

ANITA LASTER MAYS, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR